125 P.3d 1008 (2006)
131 Wash.App. 108
STATE of Washington, Respondent,
v.
Christy Dean NELSON, Appellant.
No. 22933-5-III.
Court of Appeals of Washington, Division 3, Panel Three.
January 5, 2006.
*1010 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Appellant.
Scott W. Johnson, Benton County Prosecutor's Office, Kennewick, WA, Karen A. Meyer, Deputy Pros. Atty., Richland, WA, for Respondent.
SWEENEY, A.C.J.
¶ 1 A jury convicted Christy Dean Nelson of first degree assault. He pointed a gun at his wife's head and threatened to kill her. On appeal he contends the court violated his right to a "timely" trial. We have read the rule, CrR 3.3, and counted the days and conclude his speedy trial rights were not violated. He also challenges some of the court's rulings on the admission of evidence, including the admissibility under ER 404(b) of evidence of previous domestic violence and alcoholism. We find no abuse in these discretionary rulings with the exception of the court's admission of a prior 10-year-old forgery conviction of one of the defense witnesses. But there we conclude that the court's error was harmless. Finally, Mr. Nelson contends the unprofessional conduct of the prosecutor and defense counsel denied him a fair trial. The record here on appeal is not sufficiently developed to pass on this contention. But, from what we have, we see no misconduct that would rise to the level of reversible error. We therefore affirm the conviction.

FACTS
¶ 2 Christy Dean Nelson, his wife Barbara Nelson, and her son Darrell Baltzley went out for the evening on August 30, 2003. The men drank quite a bit, Ms. Nelson less so. At around 2:00 in the morning of August 31, the police were called to the Nelson home. Ms. Nelson greeted them, told them there was no problem, and asked them to leave. Mr. Baltzley told them Mr. Nelson had threatened Ms. Nelson by putting a gun to her head. The officers arrested Mr. Nelson for first degree assault.
¶ 3 Here is what happened. Mr. Nelson pushed Ms. Nelson out of the house and ordered her to leave. She went back inside to rouse Mr. Baltzley. He was in the living room. Mr. Nelson took a gun off the rack. He repeatedly pushed the gun in Ms. Nelson's face. Several times he announced his intention to blow her (expletive) head off. She described his trying to unjam the gun and pull the trigger. She wet herself. He again threatened to kill her, and then hit her in the head with the butt.
¶ 4 Mr. Nelson was arraigned on September 5, 2003. This was four days after the revised speedy trial rules went into effect. CrR 3.3, as amended effective Sept. 1, 2003. He remained in jail. A trial date was set for November 17, 2003. This was more than 60 days from his arraignment. Mr. Nelson did not object. On November 14, Mr. Nelson signed a speedy trial waiver. On January 30, 2004, he signed another waiver, purportedly until March 22. An attempt to start the trial on March 23 was aborted. And the court postponed the trial on its own motion. Trial started on March 30, 2004.
¶ 5 At trial Mr. Nelson claimed Ms. Nelson was lying. So the State wanted to introduce evidence of Mr. Nelson's previous violent and abusive conduct when drunk to explain her *1011 equivocal statements to police at the scene. Mr. Nelson objected. The court concluded that the evidence was admissible under the rationale of State v. Grant to explain Ms. Nelson's inconsistent statements by showing that she was afraid. State v. Grant, 83 Wash.App. 98, 109, 920 P.2d 609 (1996). The court balanced the probative value of the evidence against its high potential for prejudice and found the probative value tipped the scale. The court also ruled that the defense could introduce evidence that Ms. Nelson also drank and often became assaultive or aggressive toward Mr. Nelson rather than fearful during their domestic disputes.
¶ 6 The jury found Mr. Nelson guilty of first degree assault.

DISCUSSION

SPEEDY TRIAL
¶ 7 Mr. Nelson asks us to treat November 4, 2003 (60 days from his arraignment) as the correct timely trial date, not the November 17, 2003, date set by the court. But he concedes, as he must, that he waived this date by not filing a timely objection.
¶ 8 Mr. Nelson argues that his waivers required trial dates within 60 days after they were filed. He argues that the waiver he signed on January 30, 2004 created a new trial period ending March 22. He also contends the rule required trial within 60 days of the waiver, or no later than March 22. Therefore, by starting the trial on March 30, the court denied Mr. Nelson a timely trial.
¶ 9 The State responds that even though a waiver sets forth a stipulated new trial date, the speedy trial clock is reset to zero. CrR 3.3(c)(2)(i). We agree with this reading of the rule. Mr. Nelson's January 30, 2004, waiver reset the timely trial period to zero, and March 30 was, therefore, the last timely trial date. And this is the date trial actually commenced.
¶ 10 We review the application of the speedy trial rules de novo; it is a question of law. State v. Kindsvogel, 149 Wash.2d 477, 480, 69 P.3d 870 (2003).
¶ 11 A defendant who is detained in jail must be brought to trial within a period of 60 days commencing with the date specified by the rule. CrR 3.3(b)(1)(i). The initial "commencement" date is the date of arraignment. CrR 3.3(c)(1). Read in context, "commencement date" here refers to the date upon which the 60-day trial period commences, not the date the trial must begin.
¶ 12 A signed waiver sets a new "commencement" date. CrR 3.3(c)(2)(i). That is, the waiver sets a new 60-day period within which a trial date must be set. The rule fixes this "commencement date" as the date the waiver is filed, unless the parties stipulate to a later commencement date. By the plain language of the rule, however, the new trial period cannot begin earlier than the date the waiver is filed. CrR 3.3(c)(2)(i).
¶ 13 Here, November 17, not November 4, was the "correct" initial trial date, because Mr. Nelson did not object to the November 17 date. CrR 3.3(d)(3). The requirement for a timely objection to an incorrect trial date is not an innovation of the new rules. See former CrR 3.3(f)(1) (2001). And the initial commencement date is immaterial, in any case.
¶ 14 Mr. Nelson signed two speedy trial waiversone on November 14, 2003, and another on January 30, 2004. These waivers did not specify a commencement date earlier than the date of filing. The timely trial period specified by the rule is therefore within 60 days of the trial date contemporaneously or subsequently set by the court. CrR 3.3(c)(2)(i). Mr. Nelson was, then, tried within the rules. Even by Mr. Nelson's own interpretation, the actual trial date of March 30 was the 60th day following his January 30 waiver.

APPLICATION OF ER 404(B)
¶ 15 Before trial, Mr. Nelson moved under ER 404(b) to exclude any evidence of prior uncharged misconduct. He contends the court erroneously relied on Grant to admit this evidence.
¶ 16 In Grant, evidence of a pattern of domestic violence was held to be admissible to rebut an inference that the victim's inconsistent statements and conduct called into question the credibility of her account of the *1012 crime. Grant, 83 Wash.App. at 108, 920 P.2d 609. Mr. Nelson contends the holding of Grant is limited to evidence of prior physical violence directed at the complaining witness. Here, the court admitted evidence of prior verbal abuse directed at Ms. Nelson as well as physical violence against Mr. Baltzley. And, he argues, neither of these was domestic violence as defined by RCW 10.99.020(5) (domestic violence means a crime against a member of the family or household). Verbal abuse of Ms. Nelson, he argues, was not a crime. And physical violence against Mr. Baltzley was not against the complaining witness or a member of the household. Mr. Nelson also argues that the court failed to instruct the jury to limit its use of the evidence solely to this purpose.
¶ 17 ER 404(b) prohibits evidence of past misdeeds solely to prove a defendant's criminal propensity: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
¶ 18 The question is ultimately whether the State laid a proper factual foundation to admit the evidence of prior domestic violence under ER 404(b) to establish the credibility of the complaining witness in a domestic violence case.
¶ 19 We review the court's interpretation of ER 404(b) de novo; it is a question of law. State v. DeVincentis, 150 Wash.2d 11, 17, 74 P.3d 119 (2003). We review the decision to admit or exclude the evidence for abuse of discretion if the trial court's interpretation of the rule is correct. Id. Here, the question is whether Mr. Nelson's prior uncharged and noncriminal conduct was relevant to prove something other than a propensity for domestic violence. We presume that evidence of prior bad acts is inadmissible. Id. And we resolve doubts as to admissibility in favor of exclusion. State v. Thang, 145 Wash.2d 630, 642, 41 P.3d 1159 (2002).
¶ 20 The trial court must find that the evidence is logically relevant to an issue that is before the jury and necessary to prove an essential element of the crime charged before admitting prior bad acts evidence in a criminal prosecution. State v. Barragan, 102 Wash.App. 754, 758, 9 P.3d 942 (2000); State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995). The court then balances the probative value of the evidence against its potential for prejudice. State v. Lough, 125 Wash.2d 847, 853, 889 P.2d 487 (1995).
¶ 21 Here, the State proposed to introduce evidence of Mr. Nelson's previous violent and abusive demeanor after drinking to show that Ms. Nelson was afraid of him. And this was relevant to explain her inconsistent reports to the police. She minimized the attack immediately after the incident. Mr. Nelson argued that his wife was lying. And he used her inconsistent statements as proof of that.
¶ 22 As in Grant, evidence of the history of abuse was relevant to establish a plausible alternative explanation for Ms. Nelson's inconsistent statements and to rebut Mr. Nelson's claim that it showed she fabricated the assault. The admission thus fell within the requirements of ER 404(b).

OTHER ASSIGNMENTS OF ERROR TO EVIDENTIARY RULINGS

Impeachment of Witness with Prior Conviction
¶ 23 On the evening of the assault, the Nelsons were drinking at Keno's, one of their regular haunts. Hope Saymar, a Keno's employee, was called to testify for the defense about Mr. Nelson's drinking that night. The court permitted the State to impeach Ms. Saymar with a forgery conviction that was more than 10 years old.
¶ 24 Evidence Rule 609 allows impeachment of a witness by evidence of a prior conviction for a crime of dishonesty after 10 years if two conditions are satisfied. One, the court must determine, "in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." ER 609(b). Two, the proponent *1013 must give the adverse party "advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence." Id.
¶ 25 The defense objected to the admission of Ms. Saymar's forgery conviction, but the court ruled that its probative value outweighed its prejudicial effect. The record supports Mr. Nelson's contention that the State did not give the required statutory notice, leaving him no opportunity to contest the admission of the evidence. We conclude, then, that the court should not have admitted the old conviction.
¶ 26 But an erroneous evidentiary ruling is not grounds to reverse unless, within reasonable probabilities, it changed the outcome of the trial. State v. Christopher, 114 Wash.App. 858, 863, 60 P.3d 677, review denied, 149 Wash.2d 1034, 75 P.3d 968 (2003); State v. Tharp, 96 Wash.2d 591, 599, 637 P.2d 961 (1981).
¶ 27 Mr. Nelson asserts the error was prejudicial but does not explain how. And we do not find the prejudice was so obvious that the record speaks for itself. The evidence that he assaulted his wife in the manner alleged by the State was overwhelming. The error was therefore harmless. State v. Davis, 154 Wash.2d 291, 305, 111 P.3d 844 (citing State v. Guloy, 104 Wash.2d 412, 426, 705 P.2d 1182 (1985)), cert. granted, ___ U.S. ___, 126 S.Ct. 547 (2005).

Property Settlement
¶ 28 At the time of trial, Mr. and Ms. Nelson had reached a property division agreement in their pending dissolution proceedings. Mr. Nelson contends, without citation to the record, that the State alluded to the property settlement in violation of ER 408 (offers of compromise and settlement in civil actions). The State moved in limine before trial to exclude reference to the settlement, possibly because it cast Mr. Nelson in a good light. Mr. Nelson seems to think the settlement could be seen as some sort of admission of guilt, comparable to offers of compromise barred by ER 408.
¶ 29 We do not review assignments of error without citation to the record. RAP 10.3(a)(5). Here, we can only speculate as to the basis of Mr. Nelson's objection. And we cannot tell whether any error was preserved. Nonetheless, the general rule is that ER 408 does not apply in criminal trials. State v. O'Connor, 155 Wash.2d 335, 348, 119 P.3d 806 (2005).

Impeachment of Other Witness
¶ 30 Karen Ward, a second Keno's employee, testified that she did not see Mr. Nelson with a drink during a five-hour period that night. On cross-examination, Ms. Ward testified that Prosser police often visited Keno's when its patrons became rowdy. And over serving had been a problem in the past. The prosecutor then asked Ms. Ward whether the owners had talked to her about their potential civil liability for over serving Mr. Nelson. They had not, but Ms. Ward could not say whether they had talked to Ms. Saymar. The defense objected. But the court overruled without discussion.
¶ 31 Mr. Nelson contends this was error because no civil action was actually pending against Keno's. He concedes that cross-examination to establish bias is sometimes allowed. State v. Jones, 67 Wash.2d 506, 512, 408 P.2d 247 (1965). To be admissible, the facts offered to show bias must be material. The evidence must be specific, and not vague, argumentative, or speculative. Id.
¶ 32 In Jones, the proposed evidence included no specific acts or statements. It merely suggested bias in "the most indefinite and speculative way." Id. Here, by contrast, Keno's over-serving problem was a fact known to the witness. The testimony was sufficiently specific "to meet the purpose for which it was offered." Id.

Counsel's Conduct
¶ 33 Finally, Mr. Nelson contends that the actions of both the prosecutor and defense counsel were unprofessional and hostile so as to deprive him of a fair trial. His complaints center on snide remarks he contends the prosecutor made about the defense's opening statement.
*1014 ¶ 34 The State responds that Mr. Nelson waived the issue by failing to object or ask for a curative instruction. And the conduct alleged is not so flagrant and ill intentioned as to be beyond cure.
¶ 35 Prosecutorial misconduct requires a showing that the prosecutor's conduct was both improper and prejudicial. State v. Hughes, 118 Wash.App. 713, 727, 77 P.3d 681 (2003) (citing State v. Stenson, 132 Wash.2d 668, 718, 940 P.2d 1239 (1997)), review denied, 151 Wash.2d 1039, 95 P.3d 758 (2004). The defendant bears the burden of establishing both the misconduct and prejudice. Id. Opening statements were not transcribed and sent as part of the record.
¶ 36 The record is insufficient to review this assignment of error. Mr. Nelson, as the appellant, has the burden of providing those parts of the record that are relevant to his assignments of error. State v. Badda, 66 Wash.2d 314, 320, 402 P.2d 348 (1965).
¶ 37 Without a record, we cannot address Mr. Nelson's concerns. Mr. Nelson's complaints about the tone of the trial and the demeanor of counsel are not reviewable beyond what is captured in the record. Defense counsel did not object to the prosecutor's conduct. It appears a timely objection would have been effective: the court responded appropriately to the prosecutor's complaint about defense counsel's demeanor by asking counsel to be "gentlemanly." Report of Proceedings at 137. As an aside, such conduct, if it did occur, is rarely effective in advancing a cause and does violence to the process we are all engaged in.
¶ 38 We affirm the judgment and sentence.
WE CONCUR: SCHULTHEIS and BROWN, JJ.