IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32124-0-III |
| Respondent, | ) | (consolidated with |
| | ) | 32125-8-III) |
| v. | ) | |
| | ) | |
| JUAN JOSE SERRANO BERRIOS, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

FEARING, J. — A jury found Juan Jose Serrano Berrios guilty of some, but not all,

charges arising from two domestic violence incidents directed at his former girlfriend,

Isabel Hernandez. On appeal, he principally contends the trial court committed error by

consolidating the two prosecutions for the two discrete incidents into one case for

purposes of trial. We disagree and affirm the convictions. We remand, however, for a

new sentencing.

Juan Jose Serrano Berrios prefers the surname, Berrios.

FACTS

Juan Jose Berrios and Isabel Hernandez dated off and on from 2007 to 2012. In April 2010, the couple bore one daughter together. The couple separated in July 2012, and Hernandez and the daughter moved to an apartment in Ephrata.

Juan Jose Berrios began stalking Isabel Hernandez in July 2012. Between July 1, 2012 and July 24, 2012, Berrios sent Hernandez multiple threatening text messages. On July 13, 2012, Berrios pushed in the door to Hernandez's apartment, grabbed her by the jaw, and bit her lip. This assault led to the first set of charges.

On July 22, 2012, Juan Jose Berrios struck the back of Isabel Hernandez's car with his car and tried to push her car off the street. This battery led to the second charges.

PROCEDURE

On July 18, 2012, the State of Washington charged Juan Jose Berrios with first degree burglary, fourth degree assault, and third degree malicious mischief, based on the July 13, 2012 attack on Isabel Hernandez. The State sought a domestic violence enhancement for each charge.

On July 27, 2012, under a separate cause number, the State of Washington charged Juan Jose Berrios with second degree assault, reckless endangerment, reckless driving, and cyberstalking. On September 24, 2012, the State amended those charges to include felony harassment. The charges in the second information arose from the July 22, 2012

2

battery and the threatening text messages Berrios sent during July. The State also sought

a domestic violence enhancement for each of these charges, except for reckless driving.

On February 26, 2013, the State moved to consolidate the two cases for trial. Juan

Jose Berrios registered no objection to the consolidation, and the trial court granted the

State's motion. On June 25, 2013, Berrios' private attorney withdrew from the case with

the court's permission, and the court appointed a public defender for Berrios.

On August 5, 2013, Juan Jose Berrios objected to consolidation and moved to

sever the two prosecutions for trial. The trial court denied Berrios' motion. In its ruling,

the trial court outlined the factors for consideration when consolidating criminal cases

and thoroughly reasoned

> the test for prejudice as cited in the [S]tate's brief—is a multi-part
> test. First, there has to be a strength—the court has to look at the strength
> of the [S]tate's evidence on each count. And I've done that, and the
> evidence is strong on each count.
> Next is the clarity of defenses as to each count. The defenses are
> alibis, is what I've been told in the last hearing, so they're extremely clear
> defenses.
> The next part is if the court instructs the jury to consider each count
> separately. There's a WPIC for that, and that can be done easily.
> And the final part is the part that the court asked the parties to brief
> and it hasn't been briefed, and that's the admissibility of evidence of other
> charges even if they weren't joined. So that's the—cross-admissibility
> issue.
> So with regards to that last element, to determine prejudice, first we
> do have a harassment charge, and—case law is replete—with authority that
> says with regards to harassment one of the elements is a reasonable
> apprehension and actual apprehension, and that therefore prior bad acts
> come in for that purpose. So, for instance, on the harassment charge, which
> is in the—395 case, the facts of 373 would come in— . . .

. . . .

The case law which I'll discuss is still evolving on admissibility of domestic violence acts, just for showing common scheme or plan, for instance . . . But there's at least some cross-admissibility when we have a harassment charge. A lot of this will come in for the harassment charge. It doesn't mean that there's 100 percent pure cross-admissibility . . .

. . . .

But the cases . . . I looked to are—State v. Baker, 162 Wn. App. 468 [259 P.3d 270 (2011)]—That's a 2011 case that came out of Division I, after the Magers case which is the Supreme Court case that attempted to clarify some of these issues. And the Baker case spoke to just general admissibility in domestic violence cases of the history of—of a relationship, not just admitting it for recanting victims. Because there's other case out of Division II and III, and the Magers case—Those are State v. Nelson 131 Wn. App. 108 [125 P.3d 1008 (2006)], State v. Cook, 131 Wn. App. 845 [129 P.3d 834 (2006)], and then the—State v. Magers case, which is a Supreme Court case, which is 164 Wn.2d 174 [189 P.3d 126 (2008)]. All those cases other than Baker spoke about cross-admissibility either for purposes of admitting apprehension for harassment purposes or apprehension as an element of assault, if the second or third common law definition is used for assault—or for recanting victims, or for victims that don't report right away. All these would allow the history of domestic violence. Baker went one step further—That's the latest case, 2011—just to show the dynamic of the relationship.

So, we see this evolving law on—the history of domestic violence, if it's between the same two people who are involved in a relationship.

There's also, of course, notions of—standard notions of [ER] 404(b) exceptions to the rule against character evidence, such as a common scheme or plan, making something relevant or admissible under 404 . . . given that background, then, there's a lot of evidence that will be cross-admissible. There might be some nuances where some may or may not be, and there may be several limiting instructions to the jury that you can consider this for that but not for this, and this act for this and not for that, but given the—the tests that I've just laid out for prejudice, which is necessary for a person who's moving for severance, just reviewing once again, the strength of the evidence is strong on each count, the clarity of the defenses is strong on each count.

There are alibis, so the defense here is, "I wasn't the one that did it." I think that even makes it more likely, because of that, that these—more

4

acts will be cross-admissible, because, with a common scheme or plan doctrine to apply, it normally applies when there's a question of who did an act,—it's almost like a signature crime kind of thing. And here it's a denial by the defendant, he wasn't even there.

I think these all point out to the appropriateness to apply the presumption that these case should remain joined, and they—and they will.

So the motion to sever is denied for those reasons.

Report of Proceedings (RP) (Aug. 20, 2013) at 123-27.

On November 14, 2013, Juan Jose Berrios renewed his motion to sever his cases, and he filed a motion in limine seeking to exclude twenty uncharged domestic violence incident reports involving himself and Isabel Hernandez. On November 20, 2013, the trial court ruled that two of the twenty police reports were admissible for the limited purpose of proving Hernandez's reasonable fear that Berrios would carry out his threat to kill her—an element of felony harassment. *See* RCW 9A.46.020(1)(b). Later that afternoon, the State reduced the felony harassment charge against Berrios to gross misdemeanor harassment.

On November 20, 2013, Juan Jose Berrios' cases proceeded to a jury trial. Isabel Hernandez testified to the two earlier incidents involving Juan Jose Berrios, memorialized in police reports and previously ruled admissible by the trial court. Hernandez testified that, on July 3, 2012, she peered out her window and saw Berrios across the street from her apartment. She also testified that, on July 8, 2012, she took her trash outside her apartment and Berrios sprayed paint in her eyes and slapped her in the face. During her testimony, the State played Isabel Hernandez's 911 call that Hernandez

5

placed on July 13, 2013, regarding Berrios. Hernandez also testified, over Berrios'

objection, that Berrios told her he might kill her. The trial court permitted the threat to

kill as evidence of Hernandez's reasonable fear, an element of the harassment charge.

Prior to Isabel Hernandez's testimony regarding the text messages sent to her by

Juan Jose Berrios, the trial court published the text messages to the jury and gave the

following limiting instruction:

> Members of the Jury, an exhibit will now be published for you. And I understand that these are purported to be text messages, copies of text messages.
> And these—these text messages you are about to hear can only be considered by you with regards to the charge of harassment and cyberstalking. When we get the Jury Instructions you'll be given instructions as to what the elements of each of those crimes are. And I'm just advising you in advance that these text messages can only be considered with regards to those charges; again, harassment and cyberstalking charges. You cannot consider it for any other charges that are alleged; only for those two charges.

RP (Nov. 21, 2013) at 92. During Hernandez's testimony, the trial court gave another

limiting instruction:

> [T]he text messages and the testimony of this witness about the text messages—
> And I mentioned this before, but I just wanted to clarify.
> —can only be considered by you in regards to the charges or alleged crimes of harassment and cyberstalking, and you cannot consider these text messages or the testimony about the text messages for any other charges alleged.

RP (Nov. 21, 2013) at 151.

6

Ephrata Police Department Sergeant Troy Froewiss testified to the July 3, 2012

and July 8, 2012 incidents. Froewiss declared that, on July 3, 2012, he saw Berrios

within walking distance of Isabel Hernandez's apartment. Froewiss added that, on July 8,

2012, he saw Hernandez at her apartment complex. Hernandez had a bruise next to her

left eye and the area around both eyes was pink. The trial court admitted as exhibits three

photographs of Hernandez taken on July 8. After the admission of the photographs, the

trial court instructed the jury: "these pictures that have just been admitted . . . you are to

consider them only in regards to the charged crime of harassment. You cannot consider

these pictures for any other charges alleged." RP (Nov. 22, 2013) at 75-76.

Juan Jose Berrios proposed the following jury instruction regarding which

evidence the jury could properly consider for each charged offense:

> Certain evidence has been admitted in this case of Burglary First Degree, Assault 4th Degree and Malicious Mischief Third Degree. Other evidence in this case as to Assault Second Degree, Harassment, Cyberstalking, Reckless Driving and Reckless Endangerment. Evidence as to one crime cannot be considered by you as to evidence of another crime. You may not consider the evidence as to one crime as proof of the other crime. Any discussion of the evidence during your deliberations must be consistent with this limitation. . . .
>
> . . . .
>
> Certain evidence has been admitted regarding the charges involving the allegations of Burglary First Degree, Assault . . . 4th Degree and Malicious Mischief Third Degree. Other evidence has been admitted regarding the charges involving the allegations of Assault in the Second Degree, Harassment, Cyberstalking, Reckless Driving and Reckless Endangerment. You may not consider the evidence of one alleged crime as proof of any other alleged crime. Any discussion of the evidence during your deliberations must be consistent with this limitation.

7

Clerk's Papers (CP) (No. 32124-0-III) at 225, 229. The trial court declined to give the

proposed instruction, because:

> [the jury has] another instruction that tells them evidence is testimony. And so I can think of a myriad of items of testimony, starting out with the defendant's name and where he lived and the nature of his relationship that would apply to many of the crimes.
>
> And so that that word "evidence" there in the third sentence would confuse the jury and perhaps make them think that an elemental piece of evidence, such as the examples I just gave, could not be used for multiple crimes. Truly, the jury cannot consider each crime other than separately. But there might be—or there will be items of evidence that apply to multiple crimes, again, starting with the example of the defendant's name.

RP (Nov. 25, 2013) at 15. The trial court instead instructed the jury:

> A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.
>
> . . . .
>
> Certain evidence has been introduced in this case for only a limited purpose. This evidence consists of the testimony regarding the text messages and may be considered by you only for your deliberations on the charges of harassment and cyberstalking. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.
>
> . . . .
>
> Certain evidence has been introduced in this case for only a limited purpose. This evidence consists of the testimony regarding the events of July 3, 2012 and July 8, 2012, and may be considered by you only for your deliberations on the charge of harassment. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

CP (32124-0-III) at 289, 296-97.

The jury found Juan Jose Berrios guilty of fourth degree assault, harassment, and cyberstalking. The jury acquitted Berrios on all other charges. The jury also found that Berrios and Isabel Hernandez were members of the same family or household for the purpose of the domestic violence enhancement.

The trial court sentenced Juan Jose Berrios on the fourth degree assault charge to 360 days' confinement, with 330 days suspended, to run concurrent with the sentences on the harassment and cyberstalking conviction sentences. For the harassment and cyberstalking convictions, the trial court sentenced Berrios to 360 days in jail, with 90 days suspended, on each count, to run concurrent. The trial court suspended the sentences for a period of two years and placed Berrios on probation for this time period pursuant to RCW 9.95.210. Over Berrios's objection, the trial court declined to give him credit for the 517 days he served in jail before trial against the suspended jail time. The trial court stated "[T]his suspended jail time begins to run as of the date of sentencing." RP (Dec. 17, 2013) at 311.

## LAW AND ANALYSIS

On appeal, Juan Jose Berrios contends that the trial court erred when: (1) denying his motion to sever the two cases against him, (2) declining to use his proposed jury instruction regarding handling the two cases, and (3) refusing to give him credit for time served against his suspended sentences. We address these contentions in such order.

9

*Issue 1: Whether the trial court erred in denying Juan Jose Berrios' motion to sever the two cases against him for trial?*

*Answer 1: No.*

Juan Jose Berrios first contends that the trial court erred in denying his motion to sever the two cases against him for trial. He argues that the four factors a trial court must consider when deciding whether to grant a motion to sever dictate the granting of the severance motion. The State contends that the trial court did not abuse its discretion in denying Berrios' motion to sever since Berrios cannot show prejudice that outweighs the concern for judicial economy. This court reviews a trial court's denial of a motion to sever for manifest abuse of discretion. *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994); *State v. Bythrow*, 114 Wn.2d 713, 717, 790 P.2d 154 (1990). We agree with the State that the trial court did not abuse its discretion.

CrR 4.3(a) provides:

> Two or more offenses may be joined in one charging document, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:
> (1) Are of the same or similar character, even if not part of a single scheme or plan; or
> (2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Conversely, CrR 4.4(b) provides, in relevant part:

> The court . . . on application of the defendant . . . shall grant a severance of offenses whenever before trial or during trial with consent of

10

the defendant, the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense.

A defendant bears the burden of demonstrating that trying offenses together "would be so manifestly prejudicial as to outweigh the concern for judicial economy." *Bythrow*, 114 Wn.2d at 718. When determining whether the potential for prejudice warrants severance under CrR 4.4(b), the trial court must consider: (1) the strength of the State's evidence on each offense, (2) the clarity of the defenses to each offense, (3) the court's instructions to the jury that it consider each count separately, and (4) the cross-admissibility of evidence of other charges if they had not been joined for trial. *Russell*, 125 Wn.2d at 63. After considering these factors, if a trial court determines that a defendant may be prejudiced by joinder, such "residual prejudice" shall be weighed against the need for judicial economy. *Russell*, 125 Wn.2d at 63.

Juan Jose Berrios argues that all of the State's charges rested primarily on Isabel Hernandez's testimony and therefore consolidating the two cases for trial bolstered Hernandez's testimony and unduly prejudiced him. After reviewing the relevant factors, we conclude otherwise.

The trial court considered the evidence of each charge and found the evidence strong on each count. In addition to Isabel Hernandez's testimony, the State relied on corroborative testimony from Sergeant Troy Froewiss, two police reports, photos of Hernandez's injuries, a recording of Hernandez's call to 911, and multiple threatening

11

text messages sent by Juan Jose Berrios to Hernandez. Berrios fails to identify weaknesses in the State's evidence, instead relying on the conclusory statement that joinder of the charges "bolstered" Hernandez's testimony. We agree with the trial court's assessment of the strength of the evidence.

Juan Jose Berrios concedes that he asserted common defenses for all charges against him. Berrios asserted alibi defenses when moving for severance and presented a general denial defense at trial. Although Berrios' defense differed pre- and posttrial, it remained the same as to each charged offense at each stage of the prosecution. The likelihood that joinder will cause a jury to be confused as to the accused's defenses is very small when the defense is identical on each charge. *State v. Russell*, 125 Wn.2d at 64; *State v. Hernandez*, 58 Wn. App. 793, 799, 794 P.2d 1327 (1990). The trial court correctly found that prejudice from joinder of the offenses was unlikely given that Berrios's defenses as to each charge were identical.

Juan Jose Berrios concedes that the trial court instructed the jury that it must decide each count separately and provided limiting instructions for the text messages and evidence of his prior harassment of Isabel Hernandez. Nevertheless, Berrios asserts prejudice because the trial court declined to give the exact instruction he proposed, which instruction would have expressly limited consideration of evidence to the specific charges for which the evidence was offered. The trial court rejected Berrios' proposed instruction because of its confusing nature when considering much of the evidence overlapped

12

among the charges. A jury will likely find compartmentalizing evidence of separate

counts allegedly committed by a single defendant more difficult than compartmentalizing

evidence of counts of separate defendants. *United States v. Johnson*, 820 F.2d 1065,

1071 (9th Cir. 1987). The trial court opted to deliver the tested WPIC 3.01.

A trial court's refusal to issue a requested instruction, when based on the evidence

in the case, is reviewed for abuse of discretion. *State v. Reed*, 168 Wn. App. 553, 571,

278 P.3d 203 (2012). A trial court abuses its discretion only where its decision is

manifestly unreasonable or based on untenable grounds or reasons. *State v. Powell*, 126

Wn.2d 244, 258, 893 P.2d 615 (1995). The refusal to give his proposed instruction likely

prejudiced Juan Jose Berrios none as shown by the jury acquitting him on a number of

charges. The acquittals show the jury's ability to weigh evidence and distinguish

between the charges. Assuming prejudice to Berrios, any prejudice was minor. The

substitute instruction given by the trial court was a correct statement of the law and

therefore not enough on its own to show the level of prejudice to Berrios sufficient to

warrant severance. *State v. Russell*, 125 Wn.2d at 66 (1994).

The last factor to consider when addressing severance is whether evidence in each

case would have been cross-admissible under ER 404(b), if severance had been granted.

*Russell*, 125 Wn.2d at 66. In other words, the trial court should analyze if evidence

relevant to one prosecution is also relevant to the other prosecution. If not, the likelihood

of prejudice to Juan Jose Berrios increases. Nevertheless, a lack of cross-admissibility

13

does not automatically require severance. *State v. Bythrow*, 114 Wn.2d at 720 (1990). A

defendant must still identify specific prejudice. *Bythrow*, 114 Wn.2d at 720.

Juan Jose Berrios challenges cross-admissibility of evidence. He argues that the

text messages and prior bad acts admitted for the harassment charge that was combined

with the July 22 counts would not have been admitted in a trial for the July 8 assault

burglary, and malicious mischief charges. Berrios particularly protests that the

presentation of text messages and evidence of prior bad acts consumed a large amount of

time at trial. He contends a focus on this evidence prevented the jury from

compartmentalizing the testimony. The State argues that the jury's acquittal of Berrios

on five charges establishes that the jury could parse the evidence for the individual crimes

charged.

ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove
> the character of a person in order to show action in conformity therewith. It
> may, however, be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or absence of
> mistake or accident.

This list of other purposes for which such evidence of other crimes, wrongs, or acts may

be introduced is not exclusive. *State v. Baker*, 162 Wn. App. 468, 473, 259 P.3d 270

(2011). This court reviews a trial court's interpretation of ER 404(b) de novo. *State v.*

*Nelson*, 131 Wn. App. 108, 115, 125 P.3d 1008 (2006).

14

As the trial court noted in its oral ruling, cross-admissibility of evidence in domestic violence cases merits special consideration. In *State v. Nelson*, 131 Wn. App. 108 (2006), this court held that evidence of a history of abuse was properly admitted under ER 404(b) to establish an alternative explanation for a domestic violence survivor's inconsistent statements, and to rebut her abuser's claim that she fabricated the alleged assault. In *State v. Baker*, 162 Wn. App. 468 (2011), this court similarly held evidence of Baker's prior assaults on his girlfriend admissible for the purpose of refuting Baker's defense. Baker had previously strangled his girlfriend several times, and at trial testified that he had not strangled her, as the State charged, but rather placed his hand over her mouth as he was helping her undress for bed.

In *State v. Magers*, 164 Wn.2d 174, 189 P.3d 126 (2008), our Supreme Court reversed this court and affirmed a trial court's admission of evidence that Kha Magers, charged with second degree assault and unlawful imprisonment of his girlfriend, had previously been in jail for fighting. The court held such evidence of prior bad acts could be admissible when the State seeks to admit the evidence for the purpose of proving the victim has a "reasonable fear of bodily injury," a material element of the second degree assault charge against Magers. *State v. Magers*, 164 Wn.2d at 183.

In the case on appeal, evidence of Juan Jose Berrios's violent entry and assault in Isabel Hernandez's apartment in the first case would be relevant to prove the reasonable fear element of the second degree assault charge against Berrios in the second case.

15

Much of the evidence against Berrios in his first case would be admissible in his second case. The trial court's astute limiting instructions to the jury greatly reduced any prejudice to Berrios by joining the charges against him.

Finally, even if Juan Jose Berrios experienced some slight prejudice from the denial of his motion to sever the cases against him, he still bears the burden of showing that this prejudice outweighs the courts' concern for judicial economy. *Bythrow*, 114 Wn.2d at 722. Berrios fails to address this burden.

*Issue 2: Whether the trial court erred in declining to use Berrios' proposed jury instruction?*

*Answer 2: No.*

When addressing Juan Jose Berrios' contention that the trial court should have severed the two cases for trial, we discussed whether the trial court committed error when declining the use of his proposed jury instruction. We concluded the court committed no error.

*Issue 3: Whether Juan Jose Berrios should have received credit for time served during his pretrial incarceration?*

*Answer 3: Yes.*

Juan Jose Berrios contends that the trial court improperly denied him credit for the 517 days he spent in jail prior to trial. Berrios argues that all criminal defendants must be given credit for presentence detention time and the court erred when it ruled the

16

suspended jail time runs beginning with the date of sentencing. The State concedes this error and maintains that resentencing is necessary.

We agree with both Juan Jose Berrios and the State. Principles of equal protection and double jeopardy demand that all defendants receive credit for time spent in incarceration prior to sentencing. *Harris v. Charles*, 171 Wn.2d 455, 470, 256 P.3d 328 (2011); *Reanier v. Smith*, 83 Wn.2d 342, 351-52, 517 P.3d 949 (1974).

Juan Jose Berrios argues in his statement of additional grounds for review (1) he was not aware that he was on probation for two years following his release from prison, and (2) he never received credit for the time he served prior to trial. As explained above, Berrios is correct that he should have received credit for the 517 days he spent in jail before trial. Nevertheless, Berrios cites to no evidence in the record nor provides any argument other than conclusory statements to support his contention that he was not aware of the terms of his release or that the trial court had imposed a two-year probation.

## CONCLUSION

We affirm Juan Jose Berrios' three convictions. We remand for resentencing with directions that the trial court give Berrios credit against his suspended sentence for time served before trial.

17

Nos. 32124-0-III; 32125-8-III
*State v. Berrios*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Korsmo, J.

18