

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  35760-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY E. CLARK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Anthony Clark appeals his convictions for fourth degree assault, unlawful imprisonment, felony harassment, and violation of a no contact order, arguing that the trial court erred in admitting ER 404(b) evidence and in not determining that two convictions constituted the same criminal conduct.  Mr. Clark also challenges the imposition of the criminal filing fee in his case.  We affirm the convictions, but remand to strike the criminal filing fee.

FACTS

Laura Thomas met Mr. Clark at Spokane Falls Community College where both were enrolled as students.  They were around 18 years old when they began dating in May 2017.

On June 30, 2017, Ms. Thomas went to Mr. Clark's apartment intending to break up with him, but she arrived later than planned. Once in the apartment, Mr. Clark's conduct scared Ms. Thomas, leading her to send a text message to her roommate, Laura Stephenson, in the hopes that Ms. Stephenson would come to Mr. Clark's apartment and help her leave safely. Instead, Ms. Stephenson called the police and Mr. Clark was arrested for fourth degree assault.

On July 1, 2017, a no contact order was put into effect directing Mr. Clark to refrain from any contact with Ms. Thomas. Despite the no contact order, the two continued to meet and have contact between July 12 and 25. On August 15, the no contact order was recalled by the district court at Ms. Thomas' request.

Shortly after rekindling their relationship, Mr. Clark started making demands of Ms. Thomas or else he would ruin her life. Mr. Clark also began threatening to torture and kill Ms. Thomas in a myriad of detailed ways. Ms. Thomas believed Mr. Clark to be capable of carrying out his repeated threats because she had seen him hit walls, throw things, and yell at other people, and she was afraid he would kill her.

On August 27, Ms. Thomas and Mr. Clark were at his apartment when Mr. Clark choked Ms. Thomas multiple times and pulled her hair. On August 28, Ms. Thomas saw Mr. Clark again. This time, Mr. Clark's mother, Francis Bean, was in the apartment. Ms. Thomas said the door to the bedroom was shut but Mr. Clark threatened her to be quiet, slapped her several times, punched her in the head, pinned her down so she was unable to

leave, bent her index finger backward, and bit her nose. Mr. Clark then choked Ms. Thomas several times. Mr. Clark also forced Ms. Thomas' face into a pillow. Ms. Thomas then told Mr. Clark she wanted to leave, but he refused to allow her, and instead, elbowed her in the sternum, and bent her right arm backwards. The next afternoon, Ms. Thomas sought medical attention. Ms. Thomas also later confided in her colleagues and provided a statement to police.

On December 6, the State charged Mr. Clark with one count each of fourth degree assault on or about June 30, 2017; violation of a domestic violence no contact order on or about July 12, 2017; second degree assault, unlawful imprisonment, and felony harassment, on or about between August 22, 2017 and August 28, 2017. The matter proceeded to a jury trial.

Mr. Clark moved in limine to prohibit the State from admitting testimony that Ms. Thomas has observed Mr. Clark hitting walls, throwing items, or yelling at people in an aggressive manner. The court listened to testimony from Ms. Thomas, who testified that she saw Mr. Clark hitting and striking walls and saw him break his stereo out of anger, which was intimidating to her. The trial court denied the motion, finding that the probative value of the evidence outweighed its prejudicial effect.

At trial, Ms. Thomas testified to all of these facts. Ms. Bean also testified that on August 28, both Ms. Thomas and Mr. Clark were in the apartment with her. Ms. Bean did not hear any strange noises, and testified the apartment has thin walls through which

she can hear talking and some of the neighbors' activities. She did not hear yelling, crying, banging, loud noises or other signs of struggle.

The jury found Mr. Clark not guilty of second degree assault, but guilty of the lesser included offense of fourth degree assault, and not guilty as to the fourth degree assault on June 30. The jury also found Mr. Clark guilty of unlawful imprisonment, felony harassment, and misdemeanor violation of a no contact order. The jury also found by special verdicts each crime constituted domestic violence.

At sentencing, Mr. Clark requested the court find that the harassment and unlawful imprisonment charges constituted same criminal conduct, arguing that the two offenses "bled together" over the course of the charging period, and that mens rea of each offense was the same. The court determined that the two felonies were not the same criminal conduct. The court then waived imposition of a standard range sentence, sentenced the defendant using a first-time offender sentencing alternative, and imposed concurrent 90 day sentences on the felony convictions. The trial court found Mr. Clark indigent for purposes of appeal.

## ANALYSIS

First, we consider Mr. Clark's challenge of the ER 404(b) evidence admitted at trial. We then turn to his two sentencing arguments.

4

*ER 404(b)*

Mr. Clark first argues that the trial court abused its discretion in admitting

allegations that Mr. Clark struck walls, yelled at others, and threw objects in anger in the

past. We conclude that the trial court did not abuse its discretion.

Evidence of "other bad acts" is permitted to establish specific purposes such as the

identity of an actor or the defendant's intent or purpose in committing a crime. ER

404(b). Those purposes, in turn, must be of such significance to the current trial that the

evidence is highly probative and relevant to prove an "essential ingredient" of the current

crime. *State v. Lough*, 125 Wn.2d 847, 863, 889 P.2d 487 (1995). Evidence admitted

under ER 404(b) is considered substantive evidence rather than impeachment evidence.

*State v. Laureano*, 101 Wn.2d 745, 766, 682 P.2d 889 (1984), *overruled in part by State

v. Brown*, 113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906 (1989); *State v. Wilson*, 60 Wn.

App. 887, 891, 808 P.2d 754 (1991).

The decision to admit evidence of other bad acts under ER 404(b), as with most

evidentiary rulings, is a matter within the discretion of the trial court. *State v.

DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003); *Lough*, 125 Wn.2d at 863.

Discretion is abused if it is exercised on untenable grounds or for untenable reasons.

*State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Before admitting

evidence of bad acts, the trial court is required to "(1) find by a preponderance of the

evidence that the misconduct occurred, (2) identify the purpose for which the evidence is

sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect." *State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012); *see also State v. Nelson*, 131 Wn. App. 108, 115, 125 P.3d 1008 (2006).[1]  It must conduct this analysis on the record.  *State v. Sublett*, 156 Wn. App. 160, 195, 231 P.3d 231 (2010), *aff'd*, 176 Wn.2d 58, 292 P.3d 715 (2012).  Error in admitting evidence under ER 404(b) is not of constitutional magnitude and is subject to harmless error analysis.  *State v. Stenson*, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997).

Here, the record supports the trial court's admission of the ER 404(b) evidence under the four relevant factors.  First, reliable evidence established that the prior act occurred.  According to the State's pretrial offer of proof, Ms. Thomas was able to describe Mr. Clark's prior violent actions.  This was sufficient for the State to meet its factual burden.  *State v. Kilgore*, 147 Wn.2d 288, 294-295, 53 P.3d 974 (2002).  Second, the evidence of the prior acts was relevant to prove Ms. Thomas reasonably feared Mr. Clark's threats.  *Nelson*, 131 Wn. App. at 116; *State v. Barragan*, 102 Wn. App. 754, 759, 9 P.3d 942 (2000).  Third, the reasonableness of Ms. Thomas' fear bore on the elements of the charged crime of felony harassment.  *Id.*; RCW 9A.46.020(1).  Finally,

---

[1] In *Nelson*, evidence of the defendant's previous violent and abusive behavior was admitted for the purpose of showing the victim was afraid of him.  131 Wn. App. at 116.

the prior act evidence was not overly prejudicial. The trial court permitted introduction of a limited description of Mr. Clark's violent behavior. This evidence was brief and was limited to Ms. Thomas' testimony.

Given all four of the elements to admissibility under ER 404(b) were satisfied, the trial court did not abuse its discretion in permitting the State to introduce evidence of Mr. Clark's prior violent behaviors.

*Same Criminal Conduct*

Next, Mr. Clark argues that the trial court erred in finding the convictions for unlawful imprisonment and harassment were not the same criminal conduct. We conclude that the trial court did not abuse its discretion.

An appellate court reviews a trial court's determination of what constitutes the same criminal conduct for abuse of discretion or misapplication of the law. *State v. Graciano*, 176 Wn.2d 531, 537, 295 P.3d 219 (2013). A trial court abuses its discretion if it makes a manifestly unreasonable decision based on untenable grounds or for untenable reasons. *Junker*, 79 Wn.2d at 26.

When sentencing a person for multiple current offenses, the sentencing court determines the offender score by considering all other current and prior convictions as if they were prior convictions. RCW 9.94A.589(1)(a). However, if the sentencing court finds that some or all of the current offenses encompass the same criminal conduct, then those offenses may only be counted as one single crime. *Id*.

7

Two crimes manifest the "same criminal conduct" only if they "require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id.* Deciding whether crimes involve the same time, place, and victim often involves determinations of fact. *Graciano*, 176 Wn.2d at 536. "In keeping with this fact-based inquiry, we have repeatedly observed that a court's determination of same criminal conduct will not be disturbed unless the sentencing court abuses its discretion or misapplies the law." *Id.* As part of this analysis, courts also look to whether one crime furthered another. *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987).

When considering if crimes encompass the same criminal intent, courts focus on the extent to which the criminal intent, viewed objectively, changed from one crime to the next. *Id.* "This analysis may include, but is not limited to, the extent to which one crime furthered the other, whether they were part of the same scheme or plan and whether the criminal objectives changed." *State v. Calvert*, 79 Wn. App. 569, 578, 903 P.2d 1003 (1995). Crimes may involve the same intent if they were part of a continuous transaction or involved a single, uninterrupted criminal episode. *State v. Deharo*, 136 Wn.2d 856, 858-859, 966 P.2d 1269 (1998). Crimes do not, however, involve the same intent when there are "sequential" instead of "simultaneous or continuous" events. *State v. Tili*, 139 Wn.2d 107, 124, 985 P.2d 365 (1999). This court once explained:

8

> Intent, in this context, is not the particular *mens rea* element of the particular crime, but rather is the offender's objective criminal purpose in committing the crime. Thus, for example, the intent of robbery is to acquire property, and the intent of attempted murder is to kill someone. Part of this inquiry is determining whether one crime furthered the other.

*State v. Adame*, 56 Wn. App. 803, 811, 785 P.2d 1144 (1990) (internal citations omitted).

There is no dispute that Mr. Clark's convictions for unlawful imprisonment and felony harassment involved the same victim. Although both crimes were charged over the same week long time period, Ms. Thomas' testimony limited the potential unlawful imprisonment to Mr. Clark's apartment, whereas the evidence indicates that the threats and harassment occurred continuously and repeatedly over the course of the charging period and were not limited in time, place, or mode of communication.

The two crimes also did not share the same objective criminal intent. Mr. Clark did not threaten to kill Ms. Thomas for the purpose of furthering his unlawful restraint of her. Mr. Clark's objectives also changed from one offense to the next. He threatened to kill Ms. Thomas in order to keep her in the relationship and further his attempts to dismiss the June 30 assault charge. Only when these threats failed to have the intended effect did he unlawfully restrain her in his apartment. Because the evidence supported a finding that the unlawful imprisonment and harassment convictions did not comprise the same criminal conduct, the trial court did not abuse its discretion.

9

*Criminal Filing Fee*

A decision released after the sentencing in this case determined that statutory changes to legal financial obligation assessments apply retroactively to cases on appeal. *State v. Ramirez*, 191 Wn.2d 732, 735, 426 P.3d 714 (2018). As a result, indigent offenders need not pay the criminal filing fee. Since Mr. Clark is indigent, we direct that the trial court strike that assessment.

He also asks that we disallow costs on appeal due to his indigency. By the terms of RAP 14.2 and our General Order of February 19, 2019, we leave that issue to our commissioner in the event that the State seeks costs in this court.

The convictions are affirmed, but remanded to the trial court for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, C.J.　　　　　　　Pennell, J.